UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

---

AUSTIN HARDWARE & SUPPLY, INC.,            Case No. 2:19-cv-785

                    Plaintiff,

v.

ALLEGIS CORPORATION,

                    Defendant.

---

### ALLEGIS' MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

---

## I.    INTRODUCTION

This is a patent infringement case wherein Austin Hardware & Supply Inc. ("Austin" or "Plaintiff") has accused Allegis Corporation ("Allegis") of infringing Austin's patents by the sale and use of Allegis' Drawer Front System. ("Accused Product", Declaration of Randall T. Skaar ("Skaar Decl."), Ex. C (see Exhibits A-B thereto)). Allegis' Accused Product includes a drawer handle and release assembly to facilitate securing and releasing a drawer from a cabinet but does not include a drawer or drawer slides. (Statement of Proposed Material Facts ("SOPF"), ¶ 1).

The specific patents-in-suit are U.S. Patent Nos. 10,004,331 ("'331 patent") and 10,455,937 ("'937 patent"). (Skaar Decl., Exs. A and B). The '331 patent issued on June 26, 2018 and the '937 patent issued on October 29, 2019. The asserted claims are claims 26-30 of the '331 patent and claims 14 and 21 of the '937 patent. (Statement of Stipulated Material Facts ("SOSF"), ¶ 1).  Claims 26 of the '331 patent and claims 14 and 21 of the '937 patent are independent claims. (SOPF, ¶ 2). Claims 27-30 of the '331 patent depend from independent claim 26. (SOPF, ¶ 3).

Allegis brings this summary judgment motion under Fed. R. Civ. P. 56(a) to obtain a ruling that Allegis does not infringe the asserted claims by the sale and use of its Drawer Front System, and a determination that the asserted claims are invalid under 35 U.S.C. §112(b).

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec*. *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   CLAIM CONSTRUCTION

The purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir. 1995) (en banc), aff'd 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute. *See id.* at 979 (holding that claim construction is a matter of law).

As the Federal Circuit made clear in *U.S. Surgical v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997), claim construction is "a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead

[they] give effect to the terms chosen by the patentee.").  "Generally speaking, we indulge a heavy presumption that a claim term carries its ordinary and customary meaning." *Ccs Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir., 2002). However, there is an exception to affording claim language its ordinary and customary meaning. When a claim term invokes 35 U.S.C. §112, ¶ 6, as a means-plus-function limitation, the claim "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. §112, ¶ 6.

For the limited purposes of this motion, Allegis adopts Plaintiff's proposed claim construction charted below for the relevant claim limitations, **with the exception of "lever engaging member**," which Allegis asserts is a means-plus-function claim limitation under 35 U.S.C. §112, ¶ 6 and must be construed according to the structure disclosed in the patent specifications. Plaintiff's claim construction is attached hereto. (SOSF, ¶ 3); (Skaar Decl., Ex. D). Allegis' arguments and proposal for the construction of the "lever engaging member" claim limitation are provided below in Sections VI(d)-(e).

| Terms/Phrases | Plaintiff Austin's Proposed Construction |
|---|---|
| handle | plain and ordinary meaning, which is "portion that serves as a handle" |
| fixed portion | plain and ordinary meaning, which is "portion that is fixed" |
| curved portion | plain and ordinary meaning, which is "portion that is curved" |
| axis surface | plain and ordinary meaning, which is "surface of the axis" |
| inner curved surface of the curved portion | plain and ordinary meaning, which is "inner surface of the curved portion of the fixed portion" |
| ~~lever engaging member~~ | ~~plain and ordinary meaning, which is "structure that engages a lever, actuator or trigger"~~ |

## IV.    INFRINGEMENT

"It is...well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1533 (Fed. Cir. 1987).

## V.    THE ACCUSED PRODUCT IS VERY DIFFERENT THAN THE PATENTED INVENTION

### a.    The Inventions Of The Patents-in-Suit.

The inventions of the '331 and '937 patents have these general features: 1) a handle that forms an axis that has an axis surface, 2) a handle from which lever engaging pins extend, and 3) a fixed portion that forms a curved portion to which the handle couples during operation. The following figure (Fig. 1) from the patents-in-suit shows these features:



### b.    __The Accused Product.__

Defendant Allegis was aware that Plaintiff was pursuing a patent since about 2015.

Allegis carefully designed the Accused Product, under the guidance of a patent attorney, to avoid

any claims of infringement. Several of the changes made to avoid infringement can be seen in

part by the image below of the Accused Product compared to the Plaintiff's invention above. The

following image depicts the Accused Product oriented similarly to Fig. 1 of the patents-in-suit.

(Skaar Decl., ¶ 9).



The design and structure of the Accused Product is very dissimilar to that disclosed and

claimed in Plaintiff's patents. Allegis' handle is a simple piece of extruded material. (SOPF, ¶ 4).

Unlike the claimed invention of the patents-in-suit, it does not form an axis with an axis surface.

Allegis' handle does not have any pins or other structure for releasing a drawer slide, as required

by the patents-in-suit. The "fixed portion" within the meaning of the patents-in-suit is completely

absent in the Accused Product. Instead, the handle of the Accused Product fits securely into splines. (SOPF, ¶ 5). Further, the end caps of the Accused Product are configured such that the structure that releases the drawer slide is a rotating cam. (SOPF, ¶ 6). There is no pin extending from the handle portion, as required by the Plaintiff's claims. The image below shows the underside of the end cap of the Accused Product so that the cam structure of the end cap can be seen. (Skaar Decl., ¶ 10).



Rotating cam of Accused Product located in the end cap.

The arguments below show that there can be no dispute that these numerous basic and deliberate design differences result in non-infringing product.

## VI. THE ACCUSED PRODUCT DOES NOT INFRINGE CLAIM 26 OF THE '331 PATENT

The Allegis Accused Product does not infringe claim 26 of the '331 patent at least because the handle of the Accused Product is not **"a handle portion pivotally engaged to a fixed portion"** and does not comprise either **"an axis having an axis surface"** or **"at least one lever engaging member."** Even one missing claim limitation from the Accused Product would require a finding of non-infringement, so the lack of the limitations listed above are more than sufficient to establish non-infringement.

Claim 26 reads in its entirety, with the portions that will be discussed herein bolded:

A method of opening a drawer, comprising:

providing a drawer release comprising **a handle portion pivotally engaged to a fixed portion**, **wherein the handle portion comprises an axis having an axis surface**, and the axis rotates in a curved portion of the fixed portion, and the axis surface rotates against an inner curved surface of the curved portion and **the handle portion comprising at least one lever engaging member that engages a lever of a drawer slide**, **the drawer engaged to the drawer slide** to provide a sliding movement to the drawer, the drawer slide having a latch or a lock that prevents the sliding movement of the drawer, the lever is integral with the latch or the lock and is moveable to release the latch or the lock of the drawer slide and allow the sliding movement of the drawer;
pulling on the handle portion to pivot the handle portion relative to the fixed portion;
causing the at least one lever engaging member to move generally downward to engage the lever of the drawer slide; and
releasing the latch or the lock on the drawer slide to unlatch or unlock the drawer slide to allow the sliding movement of the drawer.

### a.   The Accused Product Does Not Have A "Handle Portion Pivotally Engaged To A Fixed Portion."

The Accused Product does not engage a fixed portion at all since there is no fixed portion in the Accused Product.  Moreover, the spline component that the handle actually engages cannot pivot with respect to the handle.  Thus, there can be no infringement of claim 26.

When two parts are "pivotally engaged" it means in ordinary parlance that one part pivots relative to the other part to which the first is engaged. The pivotal engagement of Plaintiff's claimed invention can be seen in Fig. 1 of the '331 patent provided above. Handle 200 is

engaged to fixed portion 100 by a hinge that forms the engagement of axis 250 with curved

portion 140. (SOPF, ¶ 7). That engagement allows the handle to pivot relative to the fixed

portion to which the handle portion is engaged.  (SOPF, ¶ 8); (*See* Skaar Decl., Ex. A, Figs.1 and

2A – 2C; 6:8-11)[1]. Allegis' Accused Product is nothing like this.

First, the handle of the Accused Product simply does not include a fixed portion, as

shown above in the product image of Section V(b).  As such, the handle of the Accused Product

cannot pivotally engage a non-existent fixed portion.

Second, the handle of the Accused Product does not pivot with respect to the part to

which it is actually engaged: the spline of the end cap. It undisputed that the handle of the

Accused Product engages the spline of the end cap during use and that the handle does not pivot

relative to the spline. This is shown in Plaintiff's infringement contentions when they identify a

handle portion in the first image of the Accused Product (bracketed as "A"), but then focus only

on the spline (not the handle) when attempting to show pivoting in image 3. (*See* Skaar Decl.,

Ex. C (Ex. A thereto)). The end of the handle is locked in place into the recess of the spline by

the shape of the recess matching the shape of the end of the handle, and this prevents any

pivotable movement of the handle with respect to the spline.  Thus, this limitation is not met and

claim 26 cannot be infringed.

### b.  The Accused Product's Handle Portion Does Not Include an Axis.

The language of claim 26 requires that the "handle portion comprises an axis having an

axis surface," which is specific structure missing from the Accused Product.

Element 200 from the '331 patent illustrates the handle portion of the claimed invention.

(SOPF, ¶ 9). The axis of handle portion 200 is element 250. (SOPF, ¶ 10). The axis surface of

[1] Allegis will use a shorthand cite to the patent specification in the form [x:y-y], where x is the
column number from the patent specification and y-y are the relevant line numbers.

the handle 200 is element 255. (SOPF, ¶ 11);(Skaar Decl., Ex. A, 6:8-11). The axis 250 and axis surface 255 can be seen below in Fig. 2C of the patent, which is a side view of handle 200, with the end caps removed. (SOPF, ¶ 12). As can be seen in Fig. 1 and 2C, the handle portion of the '331 invention actually forms the axis and the axis surface. Thus, the claim language "wherein the handle portion comprises an axis having an axis surface" is illustrated clearly in Fig. 2C.



Again, the relevant claim language of claim 26 specifically reads "…**wherein the handle portion _comprises_ an axis having an axis surface…"**. (Emphasis added). The term "comprises" or "comprising" in patent claims is a term or art:

> "'[c]omprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."

*Realtime Data, LLC v. Iancu*, 2018-1154, p.13 (Fed. Cir. 2019) (citing *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997)).

Claim 26 further clarifies why this "axis" is required for the claimed invention, reciting that the structure of "the axis rotates in a curved portion of the fixed portion." Again, as detailed

above in Section VI(a), the Accused Product does not include a fixed portion, let alone a curved portion of a fixed portion.

As recited in claim 26, it is thus a requirement of the claimed invention that handle 200 itself form an axis 250 having an axis surface 255. Fig. 2C above from the patent specification illustrates this and shows the handle of the Plaintiff's invention including the essential structure of the axis and axis surface.

Allegis' Accused Product is quite different. The handle of the Allegis product does not comprise an axis or an axis surface. As can be seen in the following image of the Accused Product, there is no axis or axis surface that is part of the handle. The handle is simply an extrusion configured to be inserted into the spline of the end caps. (SOPF, ¶ 13)(Skaar Decl., ¶ 9).



Plaintiff does not dispute this difference. In fact, Plaintiff's infringement contentions remove the handle of the Accused Product from the splines and the end caps and, instead, point to features located <u>only in the end caps, not on the handle,</u> in an improper attempt to make its case for infringement. (SOPF, ¶ 14). Excerpts from Plaintiff's infringement contentions are

reproduced below. (Skaar Decl., Ex. C (Ex. A thereto)). Note that the annotations are in the original document.



**IMAGE 4**
Image 4 shows the handle portion having an axis (C).



**IMAGE 5**
Image 5 shows the Allegis drawer front further disassembled. The axis (C (A) has an axis surface (D).

Images 2–4 show the rotation of the axis (C) within the fixed portion (B).

As Plaintiff cannot show that the <u>handle</u> of the Accused Product comprises an axis or an axis surface, there can be no infringement of Claim 26 of the '331 patent or of its dependent claims 27-30.

### c. __The Axis Identified By Plaintiff Does Not Have An Axis Surface.__

Plaintiff never even alleges that the handle of the Accused Product has an axis surface. (SOPF, ¶ 15). Instead, Plaintiff in its infringement contentions removes the end cap from the handle of the Accused Product, and then disassembles the end cap to delineate sub-parts of the <u>end cap</u> in an attempt to identify an axis and axis surface. (See images 4 and 5 above). During this attempt to come up with a purported axis and axis surface in the Accused Product, the handle is conspicuously and completely absent.

According to Plaintiff, the axis C is a screw (see above image 4). (SOPF, ¶ 16). Plaintiff

has recognized that the axis of claim 26 needs to be a structure, and not an imaginary axis. The

fully disassembled end cap with Plaintiff's alleged "axis" screw removed is shown below, along

with a separate picture of the screw. (Skaar Decl., ¶¶ 11-12).



Plaintiff's alleged "axis" C

Plaintiff's alleged "axis surface" D

The Claim requires an "axis Surface" "**an axis having an axis surface…**"

Plaintiff's alleged "axis" in the Accused Product is not part of the handle portion

According to the claim requirements as alleged by Plaintiff, the "axis surface" must be

the surface of the screw because the claim requires "an axis **having** an axis surface…"  Plaintiff,

however, goes on to incongruently assert that a separate structural sub-part D (see image 5 above

from Plaintiff's infringement contentions) is the axis surface, which is fatally <u>not part of the</u>

<u>screw they identified as the axis</u>.  (Skaar Decl., Ex. C (Ex. A thereto)). As the sub-part D

identified by Plaintiff does not meet the claim limitation, because it is not the surface of the

alleged axis, there can be no infringement of claim 26 by the Accused Product.

### d. "Lever Engaging Member" Invokes 35 U.S.C. §112, Paragraph 6.

Determining whether a phrase is a means-plus-function claim element that invokes 35 U.S.C. §112, ¶ 6 is a question of claim construction and, thus, a question of law.[2]

Means-plus-function claim limitations, authorized by 35 U.S.C. § 112, ¶ 6, allow a patentee to draft claim language and terms "as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015). However, "this flexibility in claim drafting comes at a price" as the claims must then be "construed to cover only 'the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof.'" *Id.* (quoting *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347–48 (Fed. Cir. 2015)).

As the phrase "lever engaging member" does not use the term "means," there is a rebuttable presumption that the phrase is not in means-plus-function format. The courts have indicated, however, that the term "member" is a nonce word that may invoke §112, ¶ 6.[3] This is because the term "member" connotes no specific structure and therefore may be subject to § 112, ¶ 6. *Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*, 899 F.3d 1291, 1296 (Fed. Cir. 2018).

The question, therefore, becomes: does the nonce word "member" in the context of the subject claim language recite enough structure to rescue it from the application of § 112, ¶ 6? It does not in this case. The language in claim 26 provides no clear structure whatsoever for "lever

---

[2] *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1098 (Fed. Cir. 2014).
[3] *Williamson*, 792 F.3d at 1382 (citing from M.P.E.P. § 2181).

engaging member," only functional language. The only two occurrences of "lever engaging member" in claim 26 are reproduced below.

> the handle portion comprising at least one **lever engaging member** that engages a lever of a drawer slide…pulling on the handle portion to pivot the handle portion relative to the fixed portion; causing the at least one **lever engaging member** to move generally downward to engage the lever of the drawer slide;

The purpose of the "engaging member" is to engage a lever of a drawer slide, but there is literally no structure recited within the claim to perform that function. Thus, § 112, ¶ 6 is invoked and the claim must be construed to be the corresponding structure disclosed in the patent specification.

The similar term 'element' has also been specifically deemed a potential nonce word. The Federal Circuit, in construing the similar phrase "lever moving element" stated:

> In the instant case, the claimed "lever moving element" is described in terms of its function not its mechanical structure. If we accepted La Gard's argument that we should not apply section 112, p 6, a "moving element" could be any device that can cause the lever to move. La Gard's claim, however, cannot be construed so broadly to cover every conceivable way or means to perform the function of moving a lever, and there is no structure recited in the limitation that would save it from application of section 112, p 6.

*Mas-Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1214 (Fed. Cir. 1998).

The Court's reasoning in *Mas-Hamilton* applies here, as is clear from the parallels between the claim limitations "lever moving element" and "lever engaging member."

The corresponding structure for the "lever engaging member" is easily identified from the specification of the patents-in-suit. (Skaar Decl., Ex. A, Figs. 1 and 3B).



The specification states "pin 310...presses on lever 540." (Skaar Decl., Ex. A, 3:1-4, 7:1-11, and 7:36-37). The figures immediately above are Figs. 1 and 3B of the '331 patent specification that show pin 310 engaging the lever 540 of a drawer slide. Only a pin structure, and no alternative structure, is ever described or shown to perform this function. Thus, the corresponding structure to the phrase "lever engaging member" is a pin. The claim limitation resultingly reads: "the handle portion comprising at least one **pin** that engages a lever of a drawer slide."

### e. The Accused Product Does Not Have A Handle Comprising A Pin.

The handle of the Accused Product lacks a pin. Plaintiff, thus, attempts to find the claim element "lever engaging member" on the Accused Product, as depicted below as image 8, by pointing instead to the cam G connected to the spline of the end cap. (SOPF, ¶ 17); (Skaar Decl., Ex. C (Ex. A thereto)). The handle of the Accused Product is again nowhere to be seen. This is fatal to Plaintiff's case because it is an explicit claim requirement that the handle portion **comprise** the at least one lever engaging member.



**IMAGE 8**
Image 8 shows the lever engaging member (G).

Plaintiff does not show, and cannot show, "the handle portion comprising at least one pin that engages a lever of a drawer slide." That is no doubt why the handle and pin is omitted from Plaintiff's analysis of this claim limitation.

The accused device must employ means identical to or the equivalent of the structures, material, or acts described in the patent specification *Valmont Industries, Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993). Here, the Accused Product completely lacks a handle comprising a pin. There is no alternative structure of the handle whatsoever to even evaluate as a structural equivalent. Moreover, an end cap comprising a cam is certainly not analogous to the structure of a handle comprising a pin.[4] Thus, Allegis is entitled to a finding of non-infringement of claims 26-30 of the '331 patent.

---

[4] **Definition of Cam**: a projection on a rotating part in machinery, designed to make sliding contact with another part while rotating and to impart reciprocal or variable motion to it. https://www.lexico.com/en/definition/cam**.** (Skaar Decl., Ex. E). **Definition of Pin**: a piece of solid material (such as wood or metal) used especially for fastening things together or as a support by which one thing may be suspended from another. https://www.merriam-webster.com/dictionary/pin**.** (Skaar Decl., Ex. F).

**f.** __Plaintiff Cannot Establish That The Drawer Slide And Drawer Claim Limitations Are Present With The Accused Product.__

Plaintiff's infringement contentions do not even attempt to show how the drawer release of the Accused Product meets the "drawer slide" and "drawer" limitations of Claim 26 of the '331 patent. (SOPF, ¶ 18); (*See* Skaar Decl., Ex. C). "It is...well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Perkin-Elmer*, 822 F.2d at 1533.

Claim 26 requires the following structural limitations that Plaintiff fails to show were present in the accused product:

> **the drawer** engaged to **the drawer slide** to provide a sliding movement to the drawer,
>
> **the drawer slide** having a latch or a lock that prevents the sliding movement of **the drawer**,
>
> the lever is integral with the latch or the lock and is moveable to release the latch or the lock of **the drawer slide** and allow the sliding movement of the **drawer**

As Plaintiff never alleged that the claim limitations of a drawer slide and drawer are met by the Accused Product, their allegation of direct infringement of Claim 26 fails as a matter of law. Without direct infringement, there can be no indirect infringement under inducement or contributory infringement theories either. *Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004) ([I]t is well settled that there can be no inducement or contributory infringement absent an underlying direct infringement.").

## VII.    CLAIMS 26-30 OF THE '331 PATENT IS INVALID AS INDEFINITE

Method claims 26-30 are indefinite under 35 U.S.C. §112(b)[5] because the "drawer slide" and "drawer" limitations of claims 26-30 are claimed only structurally and simultaneously are never "provided" in any method step, thereby impermissibly mixing statutory classes. The determination of indefiniteness of a claim is a matter a law. *Mouldings Ltd. v. Mikron Indus., Inc.*, 417 F.3d 1356, 1359 (Fed. Cir. 2005).

Claim 26 from the '331 patent is reproduced above with its original formatting. As is apparent from the formatting, there are four categories of steps to the method: 1) Providing the drawer release, 2) Pulling on the handle portion, 3) Causing the lever engaging member to move the lever of the drawer slide and 4) Releasing the latch or lock on the drawer slide. The fatal ambiguity is in the sole *providing* step.

Plaintiff has argued in the Rule 12 briefing that the *providing* step applies to every structure in the indented paragraph that begins with the term *providing*.[6]   That is, the phrase "providing a drawer release comprising" establishes, according to Plaintiff, that the drawer slide, drawer and drawer release are all *provided*.   But the claim says otherwise.

Plaintiff's contention is at odds with the basic rules of English grammar. The language of claim 26 recites clearly that only the "drawer release" is *provided*. Element 10 in the '331 patent is the "drawer release." (SOPF, ¶ 19); (Skaar Decl., Ex. A, Fig. 1; 5:35-37). The drawer slides are completely different and distinct structures in Plaintiff's patents: elements 530 and 535. (SOPF, ¶ 20); (Skaar Decl., Ex. A, Figs. 3A – 3B; 6:3-37). The drawer is also a distinct structure: element 500. (SOPF, ¶ 21); (Skaar Decl., Ex. A, Fig. 5; 5:37-47). Providing a drawer release

---

[5] §112(b) was formerly numbered as §112, ¶ 2, and states, "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."
[6] Plaintiff argued that the *providing* step "includes all components." (ECF Doc. No. 31, p. 11).

does not encompass providing either a drawer slide or the drawer itself just like providing a tire does not encompass the provision of a vehicle to which the tire might be fastened.

The fact that the drawer slide and drawer are not provided by the claim language at all, and yet confusingly claimed structurally, renders the claim indefinite for impermissibly mixing two statutory claim types: method of use claim elements and apparatus elements. *Ipxl Holdings, L.L.C. v. Amazon.Com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). The claim is, therefore, invalid under 35 U.S.C. § 112(b) as a matter of law.

In *Rembrandt Data Technologies v. Aol LLC*, 641 F.3d 1331 (Fed. Cir. 2011) the same mixed subject matter issue arose in claim 3 of the subject patent-in-suit:

Claim 3

 A data transmitting device for transmitting signals corresponding to an incoming stream of bits, comprising:

first buffer means for partitioning said stream into frames of unequal number of bits and for separating the bits of each frame into a first group and a second group of bits;

fractional encoding means for receiving the first group of bits of each frame and performing fractional encoding to generate a group of fractionally encoded bits;

second buffer means for combining said second group of bits with said group of fractionally encoded bits to form frames of equal number of bits; trellis encoding means for trellis encoding the frames from said second buffer means; and

**transmitting** the trellis encoded frames.

The Federal Circuit found that the last element, the act of "transmitting," was a method of use of the data device and was improperly mixing of an apparatus with a method of using claim elements. The plaintiff argued that the court should infer that the transmitting language was a reference to *said transmitter section* transmitting the trellis encoded frames which, Plaintiff

argued, was obviously what was intended, and the Court should infer this as it would cure the error. *See id.* at 1339. The Court, however, held: "We have stated that [t]his court, however, repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity." *Id.* (Internal citations omitted).

Just as in *Rembrandt*, whether the mixed subject matter errors in Claim 26 could be corrected by redrafting claim 26 does not rescue the validity of the claim because that is not the way claim 26 of Plaintiff's '331 patent was drafted. Thus, claim 26, and its dependents 27-30, are fatally indefinite and must be held invalid.

The confusion caused by the indefinite language in claim 26 indeed has infected Plaintiff's infringement theory. Plaintiff first argues that the claim is clear and that all three structures, the drawer handle, the drawer slide, and drawer are part of the initial "providing a drawer release comprising" step.[7] However, Plaintiff also makes the incongruent contention that direct infringement does not require Allegis to provide the drawer slide and the drawer, but only the drawer release. (Skaar Decl., Ex. C (first row on p. 1 of Exs. A and B thereto)). Plaintiff's attempt to have it both ways highlights the effect of the indefiniteness of claim 26 discussed in *Ipxl Holding* – one cannot reasonably determine what acts would constitute infringement. Claims 26-30 are, therefore, invalid under 35 USC §112(b) for being indefinite as a matter of law.

## VIII. THE ACCUSED PRODUCT DOES NOT INFRINGE CLAIM 14 OF THE '937 PATENT

Allegis' Accused Product does not infringe claim 14 of the '937 patent at least because Accused Product does not have **"a handle portion pivotally engaged to a fixed portion"** or a

---

[7] Again, Plaintiff argued that the *providing* step "includes all components." (ECF Doc. No. 31, p. 11).

handle portion that "**comprises an axis**"; the Accused Product does not comprise "**a spring assembly**" that "**biases the handle portion to the closed position**"; the Accused Product does not "**comprise…a drawer slide**"; and the Accused Product does not have "**at least one lever engaging member**." As even one missing claim element from the Accused Product would require a finding of non-infringement, the lack of four such elements makes a determination of non-infringement more than justified.

Claim 14 of the '937 patent reads as follows:

> A release for a drawer slide, comprising:
> a **handle portion pivotally engaged to a fixed portion** to move between open and closed positions, **wherein the handle portion comprises an axis**, and the axis rotates in a curved portion of the fixed portion;
> **a spring assembly biases the handle portion** to the closed position;
> **a drawer slide**, the drawer slide comprising an outer member and an inner member, the inner member slides relative to the outer member to provide a sliding movement to the drawer slide, the drawer slide having a lock that prevents the sliding movement of the drawer slide. the drawer slide having a lever rotatably mounted to the drawer slide, wherein the lever is moveable to release the lock of the drawer slide and allow the sliding movement of the drawer slide; and,
> **at least one engaging member** that extends from the handle portion, and the at least one engaging member engages an upper surface of the lever of the drawer slide of the drawer to open or release the lock to allow the sliding movement of the drawer slide, and wherein a pulling motion applied to the handle portion moves the handle to the open position and causes the at least one engaging member to move in a substantially down-ward direction to press down on the upper surface of the lever to open or release the lock of the drawer slide.

### a.  **The Accused Product Does Not Have A "Handle Portion Pivotally Engaged To A Fixed Portion."**

See argument at Section VI(a) above, which is incorporated by reference here, as this claim limitation is identical to the corresponding limitation of claim 26 of the '331 patent.

### b.  **The Handle Of The Accused Product Does Not Comprise An Axis.**

Allegis' arguments that its handle does not comprise an axis are nearly identical to the arguments made in Section VI(b) above, and are hereby incorporated by reference. The only difference here is that Claim 14 of the '937 patent does not claim an "axis surface." The handle is still claimed but, instead, recites that "the handle portion comprises an axis." This claim limitation is not met by the screw of the Accused Product as explained above, simply because the handle of the Accused Product does not comprise the screw. The screw is in the end cap. Hypothetically, even if the screw were in the handle, the screw is fixed, holding the spline and cam in place. The screw itself cannot "**rotate in a curved portion of the fixed portion,**" as claim 14 requires. Therefore, the claim limitation regarding the axis and its function are not met, and there can be no infringement.

### c.  **The Accused Product Does Not Have "A Spring Assembly" That "Biases The Handle Portion To The Closed Position."**

The language of claim 14 further requires that "a spring assembly biases the handle portion to the closed position," which is specific structure missing from the Accused Product. Fig. 3A from the '937 patent, provided below, shows a spring directly biasing the handle portion in a closed position for the Plaintiff's invention. (Skaar Decl., Ex. B, Fig. 3A). Next to that patent figure is an image from Plaintiff's infringement contentions depicting the structure from the Allegis Accused Product that Plaintiff alleges meets this claim limitation requiring the spring to bias a handle portion. (Skaar Decl., Ex. C (Ex. B thereto)).



A spring biasing the handle portion

End cap

Cam

Spline

Spring sub-part E alleged by Plaintiff to bias a handle portion

Handle portion biased closed

F I G . 3A

Again, Plaintiff has removed the handle of the Accused Product from its infringement analysis, despite the fact that the claim limitation expressly requires biasing of the handle portion itself. As shown, the spring of the Accused Product is included in the end cap and biases the cam, not a handle. Plaintiff's infringement contentions cannot show a spring biasing a handle because such a configuration is not included with the Accused Product. The Accused Product, therefore, cannot infringe Claim 14 of the '937 patent.

**d. The Accused Product does not Comprise a Drawer Slide.**

The pertinent part of Claim 14 reads:

**A release for a drawer slide, comprising**:

a handle…

a spring assembly…

**a drawer slide**, the drawer slide comprising an outer
member and an inner member, the inner member slides
relative to the outer member to provide a sliding
movement to the drawer slide, the drawer slide having
a lock that prevents the sliding movement of the drawer
slide, the drawer slide having a lever rotatably mounted

23

to the drawer slide, wherein the lever is moveable to
release the lock of the drawer slide and allow the
sliding movement of the drawer slide;

The claim language makes clear that the Accused Product, which is merely a drawer release, must have as one of its elements a drawer slide or there can be no infringement because: "It is ... well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the ***accused device***." *Perkin-Elmer*, 822 F.2d at 1533 (emphasis added). Plaintiff, in their infringement contentions cannot point to any part of the Accused Product that forms the drawer slide claim limitation. Thus, the Accused Product does not infringe claim 14 of the '937 patent.

### e. <u>The Accused Product Does Not Have "At Least One Engaging Member That Extends From The Handle Portion."</u>

As argued above in Section VI(d) regarding claim 26, the term "engaging member" is a mean-plus-function claim limitation structurally defining a "pin." The claim then reads: "at least one pin that extends from the handle portion." Allegis' arguments that its handle does not have "at least one engaging member that extends from the handle portion" are nearly identical to the arguments made in Section VI(e) above. Those arguments are incorporated by reference in their entirety.

The primary difference here is that Claim 14 does not claim the handle *comprises* the pin, but instead claims that the pin *extends from* the handle portion.

The relevant portion of Fig. 1 from the '937 patent shows the pin extending from the handle portion. Below is an image depicting the structure from the Allegis Accused Product that Plaintiff alleges meets the "pin" or "engaging member" limitation. (Skaar Decl., ¶ 10).



Plaintiff's alleged cam G "engaging member" that extends from the handle portion"

Allegis' Accused Product has a cam mechanism that rotates to contact the lever of a drawer slide inside the end cap. (SOPF, ¶ 22). Plaintiff points to this cam located on the underside of the end cap as the structure that meets the "**at least one engaging member that extends from the handle portion**" limitation. (SOPF, ¶ 23); (*See* Skaar Decl., Ex. C (Ex. B thereto)). This is demonstrably incorrect. The handle of the Accused Product does not contact or in any way engage the cam. (SOPF, ¶ 24).

The handle of the Accused Product has been removed and is wholly absent from Plaintiff's infringement analysis for this claim limitation. Cam G from Plaintiff's infringement contentions does not show, and cannot show, a pin, or any structure, extending from the handle. Cam G does not even contact the handle of the Accused Product. (SOPF, ¶ 25); (*See* Skaar Decl., Ex. C (Ex. B thereto)). The Accused Product, therefore, cannot infringe Claim 14 of the '937 patent.

## IX.     CLAIM 14 OF THE '937 PATENT IS NONSENSICAL AND INVALID

Again, according to claim 14, the drawer release for a drawer slide must **comprise** a drawer slide. However, this is the equivalent of claiming an automobile for driving on a road that

comprises the road. Structurally and logically, a drawer release cannot **comprise** the very thing it is releasing: a drawer slide. This is clearly a claiming error that renders claim 14 nonsensical.

Because the claim is rendered nonsensical by claiming a drawer release for a drawer slide comprising a drawer slide, the claim is invalid. The Federal Circuit has specifically held:

> Rather, whereas here, claims are susceptible to only one reasonable interpretation and that interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated.

*Process Control Corp. v. Hydreclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999). Further, because "it is for the invention as claimed that enablement must clearly exist, and because the impossible cannot be enabled, a claim containing a limitation impossible to meet may be held invalid under § 112." *Id.* at 1359. Here, claim 14 contains a nonsense limitation that cannot be met and must, therefore, be held invalid under 35 U.S.C. § 112(b).

## X. THE ACCUSED PRODUCT DOES NOT INFRINGE CLAIM 21 OF THE '937 PATENT

Allegis' Accused Product does not infringe claim 21 of the '937 patent at least because it does not have **"a handle portion pivotally engaged to a fixed portion"** or **"a spring assembly biases the handle portion to the closed position"** or the **"handle portion comprising at least one engaging member."** As even one missing claim limitation from the Accused Product would require a finding of non-infringement, the lack of the limitations listed above is more than sufficient to so establish.

Claim 21 of the '937 patent reads:

A drawer assembly with a release, comprising:
a drawer;
a drawer release comprising a **handle portion pivotally engaged to a fixed portion** to move between open and closed positions;
the fixed portion attached to or connected to the drawer;

the handle portion extends an entire width or substantially
    the entire width of the drawer;

**a spring assembly biases the handle portion to the closed
    position**;

the drawer engaged to a drawer slide, the drawer slide
    comprising an outer member and an inner member, the
    inner member attached to the drawer, the inner member
    slides relative to the outer member to provide a sliding
    movement to the drawer slide, the drawer slide having
    a lock that prevents the sliding movement of the drawer
    slide, the drawer slide having a lever rotatably mounted
    to the drawer slide, wherein the lever is moveable to
    release the lock of the drawer slide and allow the
    sliding movement of the drawer slide; and,

**the handle portion comprising at least one engaging
    member**, and the at least one engaging member engages
    a surface of the lever of the drawer slide of the drawer
    to open or release the lock to allow the sliding move-
    ment of the drawer slide, and wherein a pulling motion
    applied to the handle portion causes the at least one
    engaging member to move in a substantially vertical
    direction to press against the surface of the lever to
    open or release the lock of the drawer slide.

### a. <u>The Accused Product Does Not Have A "Handle Portion Pivotally Engaged To A Fixed Portion."</u>

See argument at Section VI(a) above, which is incorporated by reference here, as this

claim limitation is identical to the corresponding limitation of claim 26 of the '331 patent.

### b. <u>The Accused Product Does Not Have "A Spring Assembly" That "Biases The Handle Portion To The Closed Position."</u>

See argument at Section VIII(c) above, which is incorporated by reference here, as this

claim limitation is identical to the corresponding limitation of claim 14 of the '937 patent.

### c. The Accused Product Does Not Have A "Handle Portion Comprising At Least One Engaging Member."

Claim 21 of the '937 patent further requires that the claimed drawer release system have a handle portion *comprising* at least one engaging member. The "at least one engaging member" has the functional limitation of: "engages a surface of the lever of the drawer slide of the drawer to open or release the lock." This is a means-plus-function limitation for the same reasons as argued above in Section VI(d). As such, "one engaging member" is limited to the corresponding structure recited in the specification: a pin. As shown and depicted above in Section IV(e), the handle of the Accused Product has no engaging structure at all. Moreover, a cam extending from an end cap is certainly not equivalent to a pin extending from the handle. As discussed above, the Accused Product uses a very different structure, a cam and not a pin, and extends from an end cap, not a handle. The absence of the pin or equivalent structure in the Accused Product requires a finding of non-infringement of claim 21 of the '937 patent.

### d. The Accused Product Drawer Release Does Not Infringe Claim 21 Because There Is No Drawer Or Drawer Slide.

Claim 21 further requires both a drawer and a drawer slide in addition to the drawer release. The Accused Product, according to paragraphs 15-71 of Plaintiff's Second Amended Complaint (ECF Doc. No. 42), is only a drawer release – and not a drawer or drawer slide. (SOPF, ¶ 26).

Since a drawer slide and a drawer are both absent in the Accused Product, direct infringement cannot be established by Allegis' actions, as argued above in Section VI(f). *Perkin-Elmer*, 822 F.2d at 1533. Without direct infringement, there can be no indirect infringement under inducement or contributory infringement theories either.

## **CONCLUSION**

Based upon the forgoing, Allegis requests that its motion for Summary judgment be granted.

Dated: February 15, 2020                            s/ Randall T. Skaar
                                                  Randall T. Skaar (Admitted)
                                                  Scott Ulbrich (305947)
                                                  Attorney for Allegis Corporation
                                                  **SKAAR ULBRICH MACARI, P.A.**
                                                  601 Carlson Parkway, Suite 1050
                                                  Minnetonka, MN 55305
                                                  Telephone: (612) 216-1700
                                                  Facsimile: (612) 234-4465
                                                  skaar@sumiplaw.com
                                                  ulbrich@sumiplaw.com